No. 19,891.

M. A. FITZGERALD, *Appellee,* v. J. E. FITZGERALD, *Appellant,* and H. P. FITZGERALD and E. E. ISENBERG, *Appellees.*

### SYLLABUS BY THE COURT.

ORAL CONTRACT—*Equitable Mortgage Superior to Attachment Lien.* One to whom the owner of land is indebted, and who orally agrees to and does lend money to the landowner with which to pay some of his debts, and who promises to and does pay other of the landowner's debts, and promises to and does become surety for the landowner for other of his debts, on the agreement of the landowner that he will deed to the other certain lands to secure him for the debts, money loaned, money paid and obligations incurred, becomes an equitable mortgagee of the lands agreed to be conveyed from the time of making such agreement; and his lien is paramount to that of a subsequent attaching creditor, although the deed is not made nor recorded until after the attachment is levied.

Appeal from Sherman district court; CHARLES W. SMITH, judge. Opinion filed March 11, 1916. Reversed.

*A. M. French,* of Concordia, for the appellant.

*L. B. Beardsley, George W. Holland,* and *Oscar Ostrum,* all of Russell, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In this action the contest is between an attachment creditor and an equitable mortgage lien holder. Defendant Isenberg, the attachment creditor, prevailed over defendant J. E. Fitzgerald, the equitable mortgage lien holder, who appeals.

In September, 1908, H. P. Fitzgerald, son of J. E. Fitzgerald, owned certain real estate situated in Sherman, Russell and Wallace counties. At that time he executed three notes for $625 each, and secured the same by mortgage on the real estate in Sherman county. The plaintiff, M. A. Fitzgerald, became the owner of one of these notes.

September 29, 1910, H. P. Fitzgerald owed J. E. Fitzgerald $955.07 and was largely indebted to a number of other parties. On that day J. E. Fitzgerald agreed to loan H. P. Fitzgerald $800 with which to pay some of his debts, agreed to pay certain other debts owed by H. P. Fitzgerald, and to sign notes with him for still other debts. To secure J. E. Fitzgerald, H. P. Fitzgerald orally agreed to convey to J. E. Fitzgerald the real estate as security. The deeds were not executed at that time because there was no one near who could draw a deed or before whom it could be acknowledged. H. P. Fitzgerald agreed to execute the deeds at an early date.

March 30, 1911, E. E. Isenberg commenced an action against H. P. Fitzgerald in the district court of Russell county and caused writs of attachment to issue, which were immediately levied on the real estate in Sherman, Russell and Wallace counties. No record whatever of the attachment of the Sherman county land was made in Sherman county until April, 1913. May 11, 1912, judgment was rendered in that action in favor of Isenberg and against H. P. Fitzgerald for $6050 with interest and costs. March 11, 1913, order of sale was issued, under which the real estate in Sherman county was sold to Isenberg. This sale was confirmed and a certificate of sale issued to him. April 8, 1911, after several requests by J. E. Fitzgerald, H. P. Fitzgerald executed deeds conveying the real estate in Sherman, Russell and Wallace counties to J. E. Fitzgerald. The deed to the property in controversy was recorded April 21, 1911. J. E. Fitzgerald complied with his agreement

partly before March 30, 1911, and all before December, 1911. He also paid the taxes on the land. J. E. Fitzgerald received actual notice of the attachment suit in Russell county and of the attachment of the Sherman county land in December, 1911, but had no actual notice before that time.

The action now before this court was commenced by the plaintiff, M. A. Fitzgerald, September 15, 1913, to foreclose the mortgage held by her on the Sherman county land. J. E. Fitzgerald and E. E. Isenberg were made defendants. J. E. Fitzgerald filed his answer and cross-petition against E. E. Isenberg, claiming a lien on the property second to the mortgage lien of M. A. Fitzgerald but prior to the lien of defendant Isenberg. Isenberg answered the cross-petition of J. E. Fitzgerald, alleging that his lien was second to the lien of M. A. Fitzgerald but prior to that of J. E. Fitzgerald, and asked to have his title quieted as against J. E. Fitzgerald. Judgment of foreclosure was rendered, and out of the proceeds of the sale of the property payment was ordered as follows: first, taxes; second, the plaintiff's costs; third, the amount due the plaintiff; and the balance to be paid to Isenberg. Title was quieted in favor of Isenberg against J. E. Fitzgerald. The court made conclusions of law as follows:

"1. As between H. P. Fitzgerald and J. E. Fitzgerald the latter under the agreement made between them on September 29th, 1910, held the equitable title to the land at the time of the levy of attachment writ issued in the Russell county suit, the legal title resting in H. P. Fitzgerald.

"2. E. E. Isenberg being an attaching creditor of H. P. Fitzgerald obtained only such interest in the land in suit under his attachment as H. P. Fitzgerald then had in it, and his equity was in law inferior to that of J. E. Fitzgerald, who then had the equitable title therein; and this would have been so declared had the latter intervened in the Russell county suit and set up his said interest in the land. This interest was not subject to attachment in the suit of E. E. Isenberg against H. P. Fitzgerald and subject to be applied to the satisfaction of the judgment obtained in that suit, and this would have been so declared, if properly raised and presented in that suit.

"3. The attachment levy made on the land in suit under the writ issued on the Russell county suit was regular and being so found by the court in that case, can not be contested in this collaterial suit.

"4. J. E. Fitzgerald having permitted the legal title to stand in the name of H. P. Fitzgerald on the record of deeds in this county, in legal effect, made him his representative in the Russell county suit, and being

in privity to him in the title is bound by judgment of the court in that suit.

"5. There was jurisdiction in the district court of Russell county, Kansas, to render the judgment and order it did in the suit of *E. E. Isenberg v. H. P. Fitzgerald,* and the judgment and finding there made, that the land in suit was subject to attachment and should be applied to the payment of the judgment rendered in that case against H. P. Fitzgerald is conclusive here. In legal contemplation J. E. Fitzgerald was a party to that suit, though not a party in fact. Under the facts found that judgment was a final adjudication of the claim of J. E. Fitzgerald to the land in suit here.

"6. The payment of taxes on December 18th, 1911, on the land in suit made by J. E. Fitzgerald was voluntary, and the sum so paid is not recoverable here.

"7. As between E. E. Isenberg and the defendant, J. E. Fitzgerald, the former is entitled to judgment for his costs against the latter."

J. E. Fitzgerald's complaint is of the third, fourth, fifth, sixth and part of the seventh conclusions of law. We will pass so much of the third conclusion as reads, "The attachment levy made on the land in suit under the writ issued on the Russell county suit was regular." The remainder of the third and all of the fourth and fifth turn on the question of privity between J. E. and H. P. Fitzgerald. The correctness of the sixth and seventh conclusions follow the determination of the question of privity.

In *Challiss v. City of Atchison,* 45 Kan. 22, 25 Pac. 228, this court said that the term "privity" denotes mutual or successive relationship to the same rights of property. The quotation found in *Hungate v. Hetzer,* 83 Kan. 265, 266, 111 Pac. 183, taken from *Coleman v. Davis,* (Tex. Civ. App. 1896), 36 S. W. 103, is as follows:

"A privy in estate, so as to be bound by a judgment affecting real estate to which he was not a party, is one whose title must be derived from a party bound by the judgment." (Syl.)

A grantor and grantee of real property are in privity with each other, and as between them the grantee is bound where his grantor was bound before the grantee acquired his interest in the property. After that the grantor can not do anything or suffer anything to be done that will affect the rights of his grantee. No person could have purchased this land from H. P. Fitzgerald with knowledge of the agreement between him and J. E. Fitzgerald at any time before the recording of the deed

and acquire any interest in the property paramount or adverse to J. E. Fitzgerald. By virtue of the agreement between H. P. and J. E. Fitzgerald, the latter became the holder of an equitable mortgage on this real estate, to secure the debt owing to him—money loaned, debts paid, and obligations incurred by him in obedience to that agreement. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49; *Charpie v. Stout,* 88 Kan. 318, 128 Pac. 396; 1 Jones on Mortgages, 7th ed., §§ 163, 164; 2 Tiffany on Real Property, § 561; 27 Cyc. 983.) H. P. Fitzgerald could not avoid the effect of that agreement. Neither can any one who stands in his place. In an action between H. P. and J. E. Fitzgerald, the court would have enforced that agreement and declared the claim of J. E. Fitzgerald an equitable mortgage on the land. After the agreement was made, and as to all subsequent acts, H. P. and J. E. Fitzgerald were not privies.

Isenberg argues that J. E. Fitzgerald acquired his interest in the real estate while the attachment proceedings were pending, and is therefore charged with notice thereof, under section 86 of the code of civil procedure. The attachment proceeding was pending in Russell county. The real estate in controversy is situated in Sherman county. Section 86 of the code provides, in part:

"When the subject of the action is real property situated in two or more counties, the filing of the petition in the district court of one county shall not be held to impart notice to persons acquiring an interest in the real property situated in another county, except from the time the plaintiff in such action shall file for record with the registrar [register] of deeds of such other county, a verified statement setting forth the nature of the action, the court in which it is pending, a description of the real property sought to be affected thereby."

This statute was not complied with in any particular. Levying an attachment on the real estate in Sherman county did not impart notice of the attachment action in Russell county, although a copy of the attachment order may have been placed in a conspicuous place on the real estate. In addition to this, the rights of J. E. Fitzgerald did not date from the time of making and recording the deed, but from the time of making the oral contract with H. P. Fitzgerald.

Judgments are liens on the real estate of the judgment debtors. (Civ. Code, § 416.) Judgment lien holders are not purchasers. Their liens are upon the lands and tenements of

their debtors, and not upon lands not in fact belonging to their debtors. (*Swarts and Others v. Stees and Bryan & Hardcastle*, 2 Kan. 236, 241.) They are never considered *bona fide* purchasers, even if purchasers at all. (*Harrison & Willis v. Andrews*, 18 Kan. 535, 542; *Bodwell v. Heaton*, 40 Kan. 36, 40, 18 Pac. 901.) This court has said that an attaching creditor acquires no greater interest in attached property than that held by the attachment debtor. (*Burke v. Johnson*, 37 Kan. 337, 15 Pac. 204; *Bodwell v. Heaton*, supra; *Good v. Williams*, 81 Kan. 388, 391, 105 Pac. 433.) An order of attachment directs the sheriff to attach the lands, tenements, goods, chattels, stocks, rights, credits, moneys and effects of the defendant. (Civ. Code, § 193.) This does not command him to attach the property of any other person. A debtor to defeat his creditor may fraudulently convey his property to a third person, and the creditor can attach the property so conveyed. But in the present action it has not been shown that the property was fraudulently conveyed to J. E. Fitzgerald. The first and second conclusions of law establish the interest of J. E. Fitzgerald in the land. He can not be divested of that interest in an action between Isenberg and H. P. Fitzgerald. J. E. Fitzgerald's right to the real estate must be determined in some action in which he and Isenberg meet and contest that right. This might have been done in the attachment suit in the manner suggested in the second conclusion of law. It might have been done by Isenberg obtaining a sheriff's deed and beginning an action in ejectment against J. E. Fitzgerald. It might have been done in an action by J. E. Fitzgerald to quiet his title as against Isenberg. But until J. E. Fitzgerald's right to this property has been determined, his interest in the land remains, notwithstanding the attachment proceedings.

J. E. Fitzgerald had such an interest in this land as justified him in paying the taxes thereon for the protection of that interest, and his payment of those taxes was not the act of a volunteer. (Gen. Stat. 1909, § 9494.)

The trial court erred in its third, fourth, fifth, sixth and seventh conclusions of law. The judgment is reversed, and the district court is directed to enter judgment declaring the lien of J. E. Fitzgerald prior and superior to E. E. Isenberg, and to take further proceedings in accordance therewith.